AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  1:21mj 636 |
| ANGEL STRUNK | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____4/26/2021_____ in the county of _____Hamilton_____ in the
_____Southern_____ District of _____Ohio_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Defraud the United States |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 641 | Conversion of Public Money |
| 18 U.S.C. § 1014 | False Statements in Loan and Credit Applications |
| 18 U.S.C. § 1040 | Fraud in connection with major disaster or emergency benefits |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Ferron M. Yi, SA FBI
_Printed name and title_

Sworn to before me and signed in my presence.
**via FaceTime video**

Date: **Aug 31, 2021**

_____
Karen L. Litkovitz
**United States Magistrate Judge**

City and state:          CINCINNATI, OHIO

## AFFIDAVIT IN SUPPORT OF CRIMININAL COMPLAINT

I, Ferron M. Yi, being first duly sworn, hereby depose and state as follows:

### I. INTRODUCTION

1.     I am a Special Agent with the Federal Bureau of Investigation (hereafter "FBI")
and have been since February 2020. I am currently assigned to the Complex Financial Crimes
Squad of the Cincinnati Division. In this capacity, I investigate matters involving criminal
enterprises, white collar crimes, civil rights violations, money laundering, and various types of
fraud. Prior to my employment with the FBI, I served as a sworn peace officer in the State of
Georgia for over 10 years. I have received training and investigative experience in interviewing
and interrogation techniques, arrest procedures, search and seizure, search warrant applications,
electronic media and computer investigations, and various other crimes and investigative
techniques.

2.     As a federal agent, I am authorized to investigate violations of laws of the United
States and to execute warrants issued under the authority of the United States. Consequently, I
am an "investigative or law enforcement officer of the United States," within the meaning of
Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is
empowered by law to conduct investigations of and to make arrests for offenses enumerated in
Section 2516 of Title 18, United States Code.

3.     I am familiar with the facts and circumstances of this case. The information
contained in this affidavit is either personally known to me, based upon my interview of various
witnesses and review of various records and publicly available information, or has been relayed
to me by other agents or sworn law enforcement personnel. Because this affidavit is being
submitted for the limited purpose of obtaining criminal complaint and arrest warrants, I have not

included each and every fact known to me concerning the investigation. I have only set forth facts to establish probable cause for the charges in the complaint.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 371 (Conspiracy to commit offense or to defraud the United States), 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 641 (Conversion of Public Monies), 18 U.S.C. § 1014 (False Statements in Loan and Credit Applications), and 18 U.S.C. § 1040 (Fraud in connection with Major Disaster or Emergency Benefits), among other offenses, have been committed by Joseph Lentine, Charles Murray, Keith Lee, Faith Hill, Robert Debaun, and Angel Strunk.

## II. PROBABLE CAUSE

**A. The government is investigating fraud involving loan programs designed to assist small businesses during the pandemic.**

5. Beginning in approximately March 2021, the FBI initiated an investigation of Joseph Lentine III (dob XX/XX/1969) (hereafter "Lentine"), the purported owner of Tri State Organization, Incorporated (hereafter "Tri State Org"), Tri State Corporation, Incorporated (hereafter "Tri State Corp"), and N.Y. - OH. Property Corporation (hereafter "NY-OH"), for suspected violations of 18 U.S.C. § 1040 (Fraud in connection with Major Disaster or Emergency Benefits) and 18 U.S.C. § 1344 (Bank Fraud) among other offenses based on a review of transactional data showing that deposits stemming from Small Business Administration (hereafter "SBA") programs designed to assist small businesses and their employees during the Coronavirus (hereafter "COVID-19") pandemic had been used for purchases and expenses seemingly unrelated to job retention and other permissible business expenses.

2

6.     The investigation further revealed that from at least April 2020 to March 2021, Lentine, with the assistance of his secretary Angel Strunk (hereafter "Strunk"), acted in concert with Charles Murray (dob XX/XX/1989) (hereafter "Murray") the purported owner of Full Circle Pies, LLC and ChuckDiesel Productions, LLC; Keith Lee (dob XX/XX/1971) (hereafter "Lee"), the purported owner of OBJ Property Services, LLC and OBJ Development Properties, LLC; Faith Hill (dob XX/XX/1969) (hereafter "Hill"), the purported owner of Events by Faith, LLC; and Robert Debaun (dob XX/XX/1977) the purported owner of R&R Custom Finishes, to fraudulently obtain and misuse COVID-19 emergency relief loan proceeds. Specifically, Lentine and Strunk helped Murray, Lee, Hill, and Debaun file and submit materially false and fraudulent loan applications and supporting documents to SBA-approved lenders. After fraudulently obtaining the loans, Murray, Lee, Hill, and Debaun each individually misused the loan proceeds, including by sharing fraudulent loan proceeds with Lentine and in some cases Strunk. Strunk, Murray, Lee, Hill and Debaun also separately submitted materially false and fraudulent loan applications to the SBA and/or SBA-approved lenders and to the extent approved, misused the proceeds of those loans.

7.     During this investigation, I learned that Lentine, Strunk, Murray, Lee, Hill, and Debaun collectively applied for at least 19 loans under the SBA Paycheck Protection Program (hereafter "PPP") and 7 loans under the Economic Injury Disaster Loan (hereafter "EIDL") program, ultimately receiving 17 PPP loans, 3 EIDLs, and 1 advance EIDL totaling 17 successful PPP loans and 4 successful EIDL disbursements.

8.     The SBA PPP was established pursuant to the Coronavirus Aid, Relief, and Economic Security (hereafter "CARES") Act, a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who are

suffering the economic effects caused by the COVID-19 pandemic. The purpose of the SBA PPP loan is to provide monetary assistance for businesses to keep their workforce employed during the COVID-19 crisis. The SBA PPP allows entities to apply for low-interest private loans through certain financial institutions to pay for their payroll and certain other costs. The loan proceeds may be used to cover payroll costs, rent, interest, and utilities. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and certify eligibility in order to obtain a PPP loan.

9.     Congress expanded the SBA's EIDL program under the CARES Act to allow SBA to directly issue loans to provide economic relief to businesses that are currently experiencing a temporary loss of revenue due to COVID-19 by supplying working capital and normal operating expenses such as continuation of healthcare benefits, rent, utilities, and fixed debt payments. However, EIDL proceeds cannot be used for disbursements of dividends or bonuses or any disbursements to owners, partners, officers, directors, or stockholders, except when directly related to performance of services for the benefit of the company. EIDL proceeds also cannot be used to expand facilities or acquire fixed assets. Like with PPP loans, the amount of EIDL funds a business may receive is generally determined by the number of employees and amount of monthly expenses accrued in the previous year before the pandemic.

**Joseph Lentine III**

B. **The investigation revealed that Lentine misused PPP funds initially received for Tri State Org, Tri State Corp, and NY-OH.**

10.     On June 18, 2020, Lentine signed an Account Agreement for Stock Yards Bank and Trust (hereafter "SYBT")[1] "PPP SBA Account" ending in 5967 for Tri State Org. Upon opening this account, on June 23, 2020, Lentine signed and submitted a PPP Borrower

---

[1]SYBT is a federally insured financial institution.

Application Form, indicating that Tri State Org has a business Tax Identification Number (hereafter "TIN") of 16-1643981 and that he was 100 percent owner of the business. Lentine claimed an average monthly payroll of $9,063.17 and that the business had four employees, equaling a loan request of $22,657.00. Lentine further claimed on the PPP Borrower Application Form that the purpose of the $22,657.00 loan was for payroll.

11.    On June 23, 2020, SYBT issued loan number 23415967 with a maturity date of June 23, 2025, for Tri State Org in the amount of $22,657.00. On June 24, 2020, Lentine received a disbursement of $22,657.00 for PPP funds in his account ending in 5967. Upon receiving this disbursement, Lentine nearly depleted the PPP proceeds by making the following DDA[2] debits, which do not be consistent with payroll or legitimate business-related expenses:

      a.   $12,657.00 on June 24, 2020 – DDA debit;

      b.   $2,000.00 on June 25, 2020 – DDA debit;

      c.   $2,500.00 on June 26, 2020 – DDA debit; and

      d.   $3,500.00 on June 29, 2020 – DDA debit.

12.    On June 25, 2020, Lentine signed an Account Agreement for SYBT account ending in 6114 for Tri State Corp. Upon opening this account, on June 30, 2020, Lentine signed and submitted a PPP Borrower Application Form, indicating that Tri State Corp has a business TIN of 74-3156039, and that he was 100 percent owner of the business. Lentine claimed an average monthly payroll of $39,716.00 and that the business had eight employees, equaling a loan request of $99,290.00. Lentine further claimed that the purpose of the $99,290.00 loan was for payroll.

---

[2] In banking, DDA stands for "Demand Deposit Account" and is a debit transaction from that account which could be a withdrawal, transfer, payment, or purchase.

13.     On June 29, 2020, SYBT issued loan number 20406235 for Tri State Corp with a maturity date of June 29, 2025, in the amount of $99,290.00. On June 30, 2020, Lentine received a disbursement of $99,290.00 for PPP funds in his account ending in 6114.

14.     A review of Lentine's account ending in 6441 reveals significant indicia of money laundering and fraud, including: structuring of various cash withdrawals and purchases at various retail stores including but not limited to Home Depot, Tire Discounters, Auto Zone, Lowe's, Kroger, Pet Smart, Harbor Freight, Best Buy, and Pool and Spa Warehouse. Notably, Lentine made two purchases at Marine Sales and Service located at 2929 River Road, Louisville, Kentucky 40206 on July 07, 2020 for $2,300.00 and on July 20, 2020 for $22,700.00. The $2,300.00 was for a down payment on a 1988, 37 foot, Trojan 11 Meter yacht, purchased for a total of $25,000.00. On July 07, 2020, Lentine also made a purchase at Nation Wide Automotive Group located at 7725 Vine Street, Cincinnati, Ohio 45216 in the amount of $14,975.01 to purchase a silver 2012 Mercedes-Benz M-Class.

15.     On June 30, 2020, Lentine signed an Account Agreement for SYBT account ending in 6181 for NY-OH. Upon opening this account, Lentine submitted a PPP Borrower Application Form and indicated that NY-OH has a business TIN of 45-5076245 and that he was 100 percent owner of the business listing the address of this corporation as 679 Delhi Avenue, Cincinnati, Ohio 45204. Lentine claimed that the business had five employees and had an average monthly payroll of $20,370.65, equaling a loan request of $50,926.00. Lentine further claimed on the PPP Borrower Application Form that the purpose of the $50,926.00 loan was for payroll.

16.     On July 01, 2020, SYBT issued loan number 20409335 with a maturity date of July 01, 2025, for NY-OH in the amount of $50,926.00. On July 03, 2020, Lentine received a

6

disbursement of $50,926.00 for PPP funds in his account ending in 6181. A review of this account immediately upon receiving the PPP loan disbursement reveals significant indicia of fraud, including: various cash withdrawals and movement of funds from this account to other accounts, giving the appearance that Lentine was trying to conceal funds or inappropriately use funds derived from SBA PPP loans for this business. For example, Lentine made the following transactions within weeks of receiving PPP loan proceeds:

a. $25,000.00 on July 03, 2020 – transfer to account x6114 (Tri State Corp);

b. $10,000.00 on July 06, 2020 – DDA debit;

c. $926.00 on July 06, 2020 – withdrawal;

d. $11,350.00 on July 20, 2020 – DDA debit;

e. $1,250.00 on July 20, 2020 – withdrawal;

f. $1,500.00 on July 22, 2020 – withdrawal;

g. $750.00 on July 23, 2020 – withdrawal;

h. $3,200.00 on July 27, 2020 – withdrawal;

i. $500.00 on July 28, 2020 – withdrawal;

j. $1,500.00 on July 31, 2020 – withdrawal;

k. $1,000.00 on August 03, 2020 – DDA debit;

l. $5,000.00 on August 07, 2020 – withdrawal;

m. $2,000.00 on August 10, 2020 – withdrawal;

n. $2,000.00 on August 24, 2020 – DDA debit;

o. $2,000.00 on August 31, 2020 – withdrawal;

p. $1,000.00 on September 01, 2020 – DDA debit;

q. $500.00 on September 08, 2020 – withdrawal; and

7

r. $1,000.00 on September 11, 2020 – DDA debit.

**C. Lentine similarly misused second draw PPP loans received for Tri State Org, Tri State Corp, and NY-OH.**

17.     Following new COVID-19 stimulus legislation passed in December 2020, the SBA and SBA-participating lenders began accepting applications for second-draw PPP loans on January 13, 2021. In order to be eligible for second-draw loans, the business had to have previously received a PPP loan and used the full amount only for authorized uses.

18.     On January 28, 2021, Lentine signed a Signature Card for Fifth Third Bank business account ending in 9505 for Tri State Org with a listed address of 671 Delhi Avenue, Cincinnati, Ohio 45204. Upon opening this account, Lentine submitted a PPP Second Draw Borrower Application Form dated March 15, 2021, indicating that Tri State Org has a business TIN of 16-1643981 and that he was 100 percent owner of the business. Lentine claimed an average monthly payroll of $11,446.00 and that the business had four employees, equaling a loan request of $28,615.00. Lentine further claimed that the purpose of the $28,615.00 loan was for payroll costs. On this application, Lentine falsely certified "No" to the following question:

> Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as Addendum A.

Lentine did not list any other business under the "Addendum A" space allotted to list additional businesses owned.

19.     On March 16, 2021, Fifth Third Bank, issued SBA Second Draw PPP Loan Number 9059648501 for Tri State Org and disbursed the amount of $28,615.00 in his account ending in 9505. Like with the first draw PPP loan, upon receiving the PPP loan disbursement, Lentine made numerous purchases at retail or department stores including but not limited to Chewy.com, Petco, Maury's Tiny Cove, Lenny's Fruits and V, Rohe Pharmacy, RR Quality

Meats, Home Depot, Enterprise, Kroger, Mortons Cincinnati, Jim and Jacks, and Four Seasons. None of these expenses appear to be consistent with payroll, rent, or other permitted expenses under the PPP.

20.     On January 28, 2021, Lentine signed a Signature Card for Fifth Third Bank business account ending in 1244 for Tri State Corp with a listed address of 673 Delhi Avenue, Cincinnati, Ohio 45204. Upon opening this account, Lentine submitted a PPP Second Draw Borrower Application Form dated February 18, 2021, indicating that Tri State Corp has a business TIN of 743156039 and that he was 100 percent owner of the business. Lentine claimed an average monthly payroll of $39,716.00 and that the business had eight employees, equaling a loan request of $99,290.00. Lentine further claimed that the purpose of the $99,290.00 loan was for payroll costs. Lentine again falsely certified "No" to the following question:

> Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business?

21.     On February 19, 2021, Fifth Third Bank issued SBA Second Draw PPP Loan Number 9639908405 for Tri State Corp and disbursed the amount of $99,290.00 in his account ending in 1244. A review of this account immediately upon receiving the PPP loan disbursement reveals significant indicia of fraud, including: various purchases at retail or department stores including but not limited to Home Depot, Mariner's Landing, Tire Discounters, Ebay, Everything But The House (EBTH), Meyer Hardware, RR Quality Meats, Lenny's Fruits and V, Lowe's, Wayfair, and Amazon, and purchases at various restaurants/eateries including but not limited to Maggiano's, Dunkin, and Giovanni's. Based on my training and experience, none of these expenses appear to be consistent with payroll, rent, or other permitted expenses under the PPP. It also appeared that Lentine was structuring various cash withdrawals by breaking them into smaller amounts to help avoid detection. Based on my training and experience, this behavior

9

is a form of money laundering. In addition, he made numerous transactions which seemed calculated to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the fraud, for example:

    a.  $20,000.00 on February 22, 2021 – withdrawal;

    b.  $5,000.00 on February 22, 2021 – withdrawal;

    c.  $1,500.00 on February 25, 2021 – withdrawal;

    d.  $3,000.00 on March 01, 2021 – withdrawal;

    e.  $2,000.00 on March 05, 2021 – withdrawal;

    f.  $2,000.00 on March 09, 2021 – withdrawal;

    g.  $1,500.00 on March 12, 2021 – withdrawal;

    h.  $3,500.00 on March 16, 2021 – withdrawal;

    i.  $1,000.00 on March 18, 2021 – withdrawal;

    j.  $1,500.00 on March 20, 2021 – withdrawal;

    k.  $1,000.00 on March 22, 2021 – withdrawal;

    l.  $1,500.00 on March 24, 2021 – withdrawal;

    m.  $1,000.00 on March 26, 2021 – withdrawal;

    n.  $2,000.00 on March 26, 2021 – withdrawal;

    o.  $1,500.00 on March 28, 2021 – withdrawal;

    p.  $1,500.00 on April 01, 2021 – withdrawal;

    q.  $1,000.00 on April 01, 2021 – withdrawal;

    r.  $1,500.00 on April 02, 2021 – withdrawal;

    s.  $2,000.00 on April 05, 2021 – withdrawal;

    t.  $1,000.00 on April 12, 2021 – withdrawal;

u.  $1,500.00 on April 10, 2021 – withdrawal;

v.  $1,400.00 on April 14, 2021 – withdrawal;

w.  $1,000.00 on April 19, 2021 – withdrawal; and

x.  $1,000.00 on April 21, 2021 – withdrawal.

22.    On January 28, 2021, Lentine signed a Signature Card for Fifth Third Bank business account ending in 0634 for NY-OH with a listed address of 3545 Harvey Avenue, Cincinnati, Ohio 45229. Upon opening this account, Lentine submitted a PPP Second Draw Borrower Application Form dated March 24, 2021, indicating that NY-OH has a business TIN of 455076245 and that he was 100 percent owner of the business. Lentine claimed an average monthly payroll of $20,370.00 and that the business had five employees, equaling a loan request of $50,925.00. Lentine further claimed that the purpose of the $50,925.00 loan was for payroll costs, utilities, covered worker protection expenditures, and covered operations expenditures. Lentine again falsely certified "No" to the following question:

> Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business?

23.    On March 26, 2021, Fifth Third Bank, issued SBA Second Draw PPP Loan Number 4113668604 for NY-OH and disbursed the amount of $50,925.00 in his account ending in 0634. A review of this account immediately upon receiving the PPP loan disbursement reveals significant indicia of fraud, including: transactions and purchases, including but not limited to, Kroger, Hern Marine, Chewy.com, Napa, RR Quality Meats, Auto Zone, Home Depot, Four Seasons, Lenny's Fruits and V, Meyer, Lowe's, Enterprise, Cabana on the River, and LaRosa's. None of these expenses appear to be consistent with payroll, rent, or other permitted expenses under the SBA program.

11

24.     The chart below illustrates the loans discussed above:

| Applicant | Entity | Application Date | Application Number Loan Type | Date Entity Registered | Tax ID Used | Claimed Monthly Payroll/ Employees Claimed | Amount Approved |
|---|---|---|---|---|---|---|---|
| Lentine | Tri State Org | 6/23/2020 | SYBT PPP 1st Draw 23415967 | Ohio – N/A<br><br>Connecticut 5/23/2003 | 16-1643981 | $9,063.17/month 4 Employees | $22,657.00 |
| Lentine | Tri State Corp | 6/30/2020 | SYBT PPP 1st Draw 20406235 | Ohio – N/A<br><br>Connecticut 12/16/2002 | 74-3156039 | $39,716.00/month 8 Employees | $99,290.00 |
| Lentine | NY-OH | 6/30/2020 | SYBT PPP 1st Draw 20409335 | 4/4/2012 | 45-5076245 | $20,370.65/month 5 Employees | $50,926.00 |
| Lentine | Tri State Org | 3/15/2021 | Fifth Third PPP 2nd Draw 9059648501 | Ohio – N/A<br><br>Connecticut 5/23/2003 | 16-1643981 | $11,446.00/month 4 Employees | $28,615.00 |
| Lentine | Tri State Corp | 2/18/2021 | Fifth Third PPP 2nd Draw 9639908405 | Ohio – N/A<br><br>Connecticut 12/16/2002 | 74-3156039 | $39,716.00/month 8 Employees | $99,290.00 |
| Lentine | NY-OH | 3/24/2021 | Fifth Third PPP 2nd Draw 4113668604 | 4/4/2012 | 45-5076245 | $20,370.00/month 5 Employees | $50,925.00 |

25.     The evidence suggests that Lentine applied for and received the first draw of PPP

loan applications for businesses Tri State Org, Tri State Corp, and NY-OH at SYBT and the

second draw of PPP loan applications at Fifth Third Bank, both in Cincinnati, Ohio, after

establishing himself as a new customer at each bank for the purposes of applying for those PPP

loans.  Based on my training and experience, Lentine's actions suggest a targeted scheme to

defraud these financial institutions.  Based on the investigation to date, it appears that while these

companies existed, they did not generate the revenue or employ the number of individuals

claimed.  It appears that Lentine inflated the revenue of the business and payroll in order to

12

receive PPP funds to which he was not entitled. Based on my training and experience and the investigation to date, Lentine laundered and misused the vast majority of PPP loan proceeds received.

**D. In addition to SBA loans, Lentine fraudulently applied for and received unemployment assistance.**

26.     Records from the Ohio Department of Job and Family Services (hereafter "ODJFS") also show that from March 2020 to April 2021, Lentine received approximately $32,841.00 in deposits from the ODJFS-Pandemic Unemployment Assistance (hereafter "PUA") program. ODJFS-PUA payments were authorized under the CARES Act to provide unemployment benefits to support business owners, the self-employed, independent contractors, and others who do not qualify for traditional unemployment benefits. In order to receive ODJFS-PUA, Lentine was required to submit an application and claim unemployment on a weekly basis online. On several of those applications, Lentine made the following statements: "My place of employment is closed as a direct result of the COVID-19 public health emergency" and "I just started working again in January after suffering with congestive heart failure. Subsequently, I am high-risk for COVID-19. Also the business is considered non-essential." In addition to these statements, Lentine indicated that he qualified for ODJFS-PUA due to working for another person or employer as an employee, having the inability to telework, and being furloughed.

27.     Based on my training, knowledge, and experience, I know it is rare for a business owner that has received funds for businesses large enough to justify SBA PPP loans to simultaneously receive unemployment credits under the ODJFS-PUA program. I know this to be a strong indicator of fraud. In addition, based on the investigation to date, it appears Lentine made numerous false statements in the application for ODJFS-PUA benefits.

13

### E. In interviews with agents, Lentine confessed to extracting large payments to prepare PPP loan applications for others.

28.     On April 29, 2021, Lentine was interviewed by agents.  Lentine acknowledged filing PPP applications on behalf of numerous individuals, including, but not limited to Murray, Lee, Hill, and Debaun, and further claimed that Strunk prepared supporting documentation (including payroll tax summaries) under his direction.  Although Lentine told agents that he was not accountable for verifying the information that was provided to lenders, he conceded to knowing that some of the businesses that his associates claimed for the purposes of obtaining PPP loans were not legitimate.  Lentine further confessed that he would extract significant fees (which he claimed to be 20 to 30 percent) from those individuals who successfully received SBA PPP loans. However, under SBA rules and regulations, those who assist with preparing PPP applications are prohibited from collecting fees from borrowers and may not be paid out of PPP loan proceeds. In addition, SBA rules and regulations further provide that the total amount that anyone may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:

i.      One (1) percent for loans of not more than $350,000.00;

ii.     0.50 percent for loans of more than $350,000.00 and less than $2 million; and

iii.    0.25 percent for loans of at least $2 million.

29.     Based on my training, knowledge, experience, and the investigation to date, it appears that Lentine and Strunk intentionally prepared SBA PPP loan applications that they knew to be false for the purposes of defrauding the government in order to obtain a monetary benefit.  Bank records confirm that the individuals that Lentine and Strunk assisted in applying for PPP loans made large payments to Lentine, including up to fifty percent of the SBA PPP loan proceeds received, suggesting a concerted effort to defraud the government.

14

**Angel Strunk**

    F. **Strunk prepared SBA PPP loan applications for Lentine's associates including falsified supporting documentation.**

    30.    Strunk has been employed with Lentine since March 2020 in an administrative office manager role.  When interviewed by agents, Strunk admitted to preparing PPP applications for Lentine's associates, explaining that she "started from scratch" with Lentine's associates and for each associate needed employee numbers in order to put together a PPP loan application and supporting documentation. Strunk initially told agents that she prepared PPP loan applications for approximately four to five of Lentine's associates and because some of those associates were the purported owners of multiple businesses, she estimated preparing eight to nine PPP loan applications in total. However, she later revised her estimate to 15 or more applications with at least a dozen having already been approved.

    31.    Among the associates Strunk could recall, she named "Keith Lee" and said he had three businesses, "Faith Hill" and said she had one event planning business, "Chuck Murray" (presumably Charles Murray) and said he had two "DJ" businesses and one restaurant, and "Robert Jones" (presumably Robert Debaun) who was an independent contractor. Strunk admitted accepting $1,000.00 from "Robert Jones" for preparing his PPP loan application as well as a payment of $300.00 from another individual for preparing that person's PPP loan application.

    G. **Strunk also applied for, received, and misused SBA PPP loans for businesses she purportedly owns.**

    32.    Strunk also applied for and received PPP loans for businesses she purportedly owned. Specifically, on or about April 26, 2021, Strunk applied for a PPP loan through Fountain

SBF LLC.[3] In the application, she claimed to be a "self-employed individual" located in Cincinnati, Ohio, and claimed she would use the PPP loan proceeds for payroll. On April 26, 2021, the loan was approved for $14,165.00 (loan number 1657388902), and the proceeds were deposited into her Fifth Third Bank account ending in 0170 on May 14, 2021. A review of Strunk's Fifth Third Bank account ending in 0170 showed various cash withdrawals and transactions at various retail stores including, but not limited to, Kohl's, Chewy.com, Tuesday Morning, Walmart Supercenter, Capital One, Staples, Shoe Carnival, and Jack's Casino, and various restaurants including, but not limited to, KFC, IHOP, Wendys, O'Charley's, and McDonald's, until those funds were depleted.

33.     Pay cards provided by Lentine reflect that Strunk was employed by him throughout the pandemic and thus was not self-employed. Agents also learned during an interview with Lentine that Strunk was employed full time and never furloughed.

34.     I also recently learned that Strunk applied for another PPP loan through Intria Ventures LLC[4] in the amount of $29,820.00 (loan number 8442148404) for business Cincinnati Digital Marketing, LLC that was approved on February 13, 2021. In the application, Strunk reported that business Cincinnati Digital Marketing, LLC was a white, female-owned business which employed at least three people during the applicable loan period.

35.     An online search on the State of Ohio Secretary of State's website revealed that Cincinnati Digital Marketing, LLC was a business registered by Strunk as a "Domestic Limited Liability Company" on January 11, 2021. This is significant because in order to qualify for a SBA PPP loan, the business must have been in operation since at least February 15, 2020. Based

---

[3] Fountainhead SBF LLC is a nonbank, direct commercial lender specializing in SBA and conventional financing for small and midsized businesses.

[4] Intria is a financial services firm in the business of providing financing to its clients by making loans and purchasing accounts receivable – typically referred to as a Merchant Cash Advance (MCA) provider.

on my knowledge, training, and experience, I know this to be a strong indicator of fraud as a significant source of PPP fraud has been claims by businesses not in operation or truly functional prior to the pandemic. Based on my view of public source data, there is no evidence to suggest that Cincinnati Digital Marketing was in business before the pandemic, let alone that it employed three individuals.

36.    When questioned by agents, Strunk acknowledged that she received approximately $24,000.00 to $26,000.00 for the first draw PPP loan for business Cincinnati Digital Marketing and received approximately $14,000.00 for the first draw PPP loan for herself as a sole proprietor. Strunk claimed that she owned three businesses: Next Level Blogging, All About Cincinnati, and Cincinnati Digital Marketing, LLC. Strunk described Next Level Blogging as the outgrowth of a personal blog that she started in 2016 about affiliate marketing. Strunk additionally claimed that her business All About Cincinnati d/b/a Cincinnati Digital Marketing, LLC coached blogging techniques and blog writing. Strunk told agents that the previous year she generated approximately $60,000.00 to $75,000.00 in income from just her blog business alone while also earning up to $1,500.00 in payments from customers who take blogging classes from her. However, reviewing her financial accounts, I was not able to substantiate these claims, suggesting that these statements are false and fraudulent.

37.    The following chart illustrates the loans she received:

| Applicant | Entity | Application Date | Application Number Loan Type | Claimed Date/ Date Entity Registered | Tax ID Used | Claimed Monthly Payroll/ Employees Claimed | Amount Approved |
|---|---|---|---|---|---|---|---|
| Strunk | Angel Strunk – Independent | 4/26/2021 | 1657388902 | N/A Unknown | Unknown | Unknown 1 Employee | $14,165.00 |
| Strunk | Cincinnati Digital Marketing, LLC | 2/13/2021 | 8442148404 | N/A 1/11/2021 | Unknown | Unknown 3 Employees | $29,820.00 |

17

**H. In addition to SBA PPP loans, Strunk also applied for and fraudulently received unemployment benefits as expanded under the CARES Act.**

38.     Although Strunk was employed full time during the pandemic, records from the ODJFS show that from May 2020 to April 2021, Strunk received approximately $23,000.00 in deposits from ODJFS-PUA Program. To claim PUA benefits, Strunk filed weekly certifications online. Based on my training, knowledge, experience, and the investigation to date, I know that PUA applicants are required to self-certify that they meet a COVID-19 related reason for their unemployment and that Strunk could not have met those requirements. Based on my training, knowledge, and experience, each request for benefits therefore contained false and fraudulent statements and reflect an intent to defraud.

**Charles Murray**

**I. Murray's bank records at SYBT and Fifth Third Bank indicate that PPP loan proceeds for Full Circle Pies, LLC were misused.**

39.     The investigation revealed that Lentine directed Murray to SYBT and Lentine and Strunk prepared Murray's SBA PPP loan applications. Specifically, on June 30, 2020, Murray signed an Account Agreement for SYBT "SBA PPP Account" ending in 6173 for Full Circle Pies, LLC. Upon opening this account, on July 01, 2020, with the assistance of Lentine and Strunk, Murray submitted a PPP Borrower Application Form and indicated that Full Circle Pies, LLC, has a business TIN of 82-3985874 and that he was 100 percent owner of the business. Murray claimed an average monthly payroll of $19,878.75 and that the business had five employees, equaling a loan request of $49,696.00. Murray further claimed that the purpose of the $49,696.00 loan was for payroll.

40.     On July 01, 2020, SYBT issued loan number 20409035 with a maturity date of June 01, 2025, for Full Circle Pies, LLC, in the amount of $49,696.00. On July 03, 2020, Murray

received a disbursement of $49,696.00 for PPP funds in his account ending in 6173. Upon Murray successfully receiving SBA PPP funds for business Full Circle Pies, LLC, and against SBA rules and regulations, Murray paid Lentine $11,700.00 out of the PPP loan proceeds. With the balance of funds, Murray made numerous cash withdrawals and expenditures, including for Allianz Travel, Delta, and to an Airbnb[5] in California. Based on my review of the relevant bank records, all funds were depleted and none of the funds appeared to be used for payroll or other SBA PPP eligible business expenses.

41.      On January 15, 2021, Murray submitted a PPP Second Draw Borrower Application Form and indicated that Full Circle Pies, LLC, has a business TIN of 82-398587 [Note: Different TIN than previously used for this business] and that he was 100 percent owner of the business. Murray claimed an average monthly payroll of $20,629.00 and that the business had five employees, equaling a loan request of $72,203.00. Murray further claimed that the purpose of the $72,203.00 loan was for payroll costs, rent/mortgage interest, covered supplier costs, utilities, covered worker production expenditures, and covered operations expenditures. Murray additionally claimed that gross receipts for Full Circle Pies, LLC, first quarter totaled $167,262.00, and second quarter totaled $105,375.00.

42.      On January 27, 2021, SYBT issued loan number 20827335 with a maturity date of January 27, 2026, for Full Circle Pies, LLC in the amount of $72,201.50. On February 11, 2021, Murray received a disbursement of $72,201.50 for PPP funds in his account ending in 6173. A review of Murray's account ending in 6173 immediately upon receiving this disbursement reveals significant indicia of fraud, including: structuring of various cash withdrawals and purchases made appearing to be used for travel to Colorado, California, and

---

[5] Airbnb is a company that operates an online marketplace for lodging, primarily homestays for vacation rentals, and tourism activities.

Florida. All funds were depleted and did not appear to be used for SBA PPP eligible business expenses. A month after receiving these funds, Murray apparently transferred his interest in Full Circle Pies, LLC to Lentine. During an interview with Lentine, Lentine disclosed that he took ownership of Full Circles Pies, LLC, on or about March 2021 and began using the business as a DBA for a business called Take Out Taxi.[6]

**J. PPP funds received for Chuck Diesel Productions were also misused.**

43. On February 25, 2021, Murray completed a PPP Borrower Application Form for ChuckDiesel Productions, LLC. In the application, Murray listed his residential address, which is different from the business address listed with the State of Ohio Secretary of State. Murray claimed an average monthly payroll of $36,433.00 and claimed that the business had six employees, equaling a loan request of $91,082.00. Murray further claimed that the purpose of the $91,082.00 loan was for payroll costs, rent/mortgage interest, covered supplier costs, utilities, covered worker protection expenditures, and covered operation expenditures. Notably, despite receiving a PPP loan for Full Circle Pies, LLC, Murray falsely certified that "the applicant has not and will not receive another loan under the PPP, section 7(a)(36) of the Small Business Act 15 U.S.C. 636(a)(36)." Murray also failed to list Full Circle Pies, LLC, under the "Addendum A" space allotted to list additional businesses owned.

44. On or about February 24, 2021, Fifth Third Bank approved SBA loan number 3743708505 for ChuckDiesel Productions, LLC, in the amount of $91,082.00. On March 02, 2021, Murray received a disbursement of $91,082.00 for PPP funds in his account ending in

---

[6] Take Out Taxi is not a registered business with the Ohio Secretary of State. Physical surveillance on address 4105 North Bend Road, Cincinnati, Ohio 45211, shows a business with a large temporary printed sign hung above the door with "Take Out Taxi" displayed.

9235. A review of Murray's account ending in 9235 revealed significant indicia of fraud, including numerous cash withdrawals:

      a.   $3,000.00 on March 02, 2021 – withdrawal;

      b.   $5,000.00 on March 02, 2021 – withdrawal;

      c.   $2,000.00 on March 03, 2021 – withdrawal;

      d.   $10,000.00 on March 03, 2021 – withdrawal;

      e.   $2,000.00 on April 13, 2021 – withdrawal; and

      f.   $14,182.00 on April 14, 2021 – withdrawal.

### K. Murray also applied for EIDLs for Full Circle Pies, LLC and ChuckDiesel Productions, LLC.

45.     According to SBA records, on or about April 15, 2020, Murray applied for an EIDL (SBA application number 3304032249) for business ChuckDiesel Productions, LLC, categorized as an event planning business under the entertainment services industry based in Cincinnati, Ohio. Murray further indicated that his gross revenues for the 12 months prior to the COVID-19 disaster was $60,000.00, his cost of goods sold for the 12 months prior to the COVID-19 disaster was $40,00.00, and his expenses for the 12 months prior to the disaster was $50,000.00. On July 06, 2020, EIDL Number 6064178002 was funded in the amount of $10,000.00.

46.     On or about April 15, 2020, Murray also applied for an EIDL (SBA application number 3304058343) for business Full Circle Pies, LLC, categorized a food and beverage industry based in Cincinnati, Ohio. On this application, Murray indicated that he was 100 percent owner of Full Circle Pies, LLC, Federal TIN 82-3985874, since the business open date of January 11, 2018, and had eight employees. Murray further indicated that his gross revenues for the 12 months prior to the COVID-19 disaster was $160,000.00, and his cost of goods sold for

21

the 12 months prior to the COVID-19 disaster was $90,000.00. SBA notes indicate that an advance was disbursed to Murray on May 03, 2020. On January 18, 2021, the SBA, however, declined the loan.

**L. The number of applications and discrepancies between applications appear indicative of fraud.**

47.    Based on the investigation to date, it appears that Murray applied for the loans described below:

| Applicant | Entity | Application Date | Application Number Loan Type | Claimed Date Established/ Date Entity Registered | Tax ID Used | Claimed Monthly Payroll/ Employees Claimed | Amount Approved |
|---|---|---|---|---|---|---|---|
| Murray | Full Circle Pies, LLC | 6/1/2020 | SYBT PPP 1st Draw 20409035 | N/A 1/6/2018 | 82-3895874 | $19,879.75/month 5 Employees | $49,696.00 Paid Lentine: $11,700.00 |
| Murray | Full Circle Pies, LLC | 1/15/2021 | SYBT PPP 2nd Draw 20827335 | N/A 1/6/2018 | 82-398587 | $20,629.00/month 5 Employees | $72,203.00 |
| Murray | Full Circle Pies, LLC | 4/15/2020 | EIDL 3304058343 | 1/11/2018 1/6/2018 | 82-3985874 | N/A 8 Employees | $8,000.00 Advance |
| Murray | ChuckDiesel Productions | 2/25/2021 | Fifth Third PPP 1st Draw 3743708505 | N/A 1/29/2018 | 46-2566540 | $36,433.00/month 6 Employees | $91,082.00 |
| Murray | ChuckDiesel Productions | 4/15/2020 | EIDL 3304032249 | 4/18/2013 1/29/2018 | 46-2566540 | N/A 6 Employees | $10,000.00 |

Comparing the applications for the various businesses, I noticed differences in the claimed date the entity was created, Tax ID used, and claimed number of employees. Based on my training, knowledge, and experience, I know that applying for SBA loans for multiple entities and inconsistencies between loan applications are common indicators of fraud.

**Keith Lee**

### M. Lee misused PPP loans received for businesses OBJ Property Services, LLC, and OBJ Development Properties, LLC.

48.     The investigation also revealed that Lentine and Strunk prepared Lee's SBA PPP loan applications and assisted him throughout the application process at SYBT and Fifth Third Bank for businesses OBJ Property Services, LLC, and OBJ Development Properties, LLC. Lee was successful at receiving first round draws of PPP loan proceeds at SYBT; however, was unsuccessful at receiving second draw PPP loan proceeds at Fifth Third Bank. Upon Lee successfully receiving the first draw of SBA PPP funds for business OBJ Property Services, LLC, and OBJ Development Properties, LLC, he misused those funds.

49.     Specifically, after opening an account at SYBT at Lentine's direction, on or about July 06, 2020, Lee submitted a PPP loan Application and indicated that OBJ Property Services, LLC, has a business TIN of 84-2359910 and that he was 100 percent owner of the business. Lee claimed an average monthly payroll of $42,208.00 and that the business had six employees, equaling a loan request of $105,520.00. Lee indicated on this application that the purpose of the PPP loan was to cover payroll costs.

50.     On or about July 08, 2020, SYBT issued loan number 20414935 with a maturity date of July 08, 2025, for OBJ Property Services, LLC, in the amount of $105,520.00. On July 14, 2020, Lee received a disbursement of $105,520.00 for PPP funds in his account ending in 6211.

51.     A review of Lee's account ending in 6211 immediately upon receiving this disbursement reveals significant indicia of fraud, including: structuring of various cash withdrawals, purchases at various restaurants, including but not limited to, Red Lobster, Gold Star Chili, Aftermath Bar, Hooligan's Pub, McDonald's, and Taco Bell, and purchases at various

department and retail stores including but not limited to Home Depot, Walgreens, and Family Dollar. Lee also went on a gambling spree, making the following point of sale withdrawals at Jack's Casino located in Cincinnati, Ohio:

g.   $500.00 on July 16, 2020;

h.   $1,000.00 on July 16, 2020;

i.   $2,000.00 on July 20, 2020;

j.   $1,000.00 on July 24, 2020;

k.   $2,500.00 on July 28, 2020;

l.   $1,000.00 on July 29, 2020;

m.   $2,000.00 on July 29, 2020;

n.   $1,000.00 on August 03, 2020;

o.   $2,000.00 on August 03, 2020;

p.   $500.00 on August 07, 2020;

q.   $1,000.00 on August 13, 2020;

r.   $1,000.00 on August 14, 2020;

s.   $2,000.00 on September 10, 2020;

t.   $1,000.00 on September 14, 2020;

u.   $1,000.00 on October 19, 2020; and

v.   $500.00 on October 21, 2020.

52.      In addition, on or about July 23, 2020, Lee submitted a PPP loan Application for OBJ Development Properties, LLC, claiming a business TIN of 80-0074126 and that he was 100 percent owner of the business. [Notably, an open record review for business OBJ Development Properties, LLC, however, indicates that the agent or registrant this business was filed by a J. P.

24

of Colerain Avenue, Cincinnati, Ohio 45237 and effective on May 23, 2003.] Lee claimed an average monthly payroll of $59,631.25 and claimed that the business had six employees, equaling a loan request of $132,965.00. Lee indicated on this application that the purpose of the PPP loan was to cover payroll costs.

53.     On or about July 22, 2020, SYBT issued loan number 20462735 with a maturity date of May 27, 2022, for OBJ Development Properties, LLC, in the amount of $132,965.00. On July 23, 2020, Lee received a disbursement of $132,965.00 for PPP funds in his account ending in 6262.

54.     A review of Lee's account ending in 6262 upon receiving this disbursement reveals numerous withdrawals and suspicious transactions, including payments to co-conspirators:

   a.   $20,000.00 on July 27, 2020 – check to Lentine;

   b.   $12,000.00 on July 31, 2020 – transfer to KSL Investment Properties account;

   c.   $15,000.00 on August 21, 2020 – transfer to KSL Investment Properties account;

   d.   $10,000.00 on August 31, 2020 – transfer to KSL Investment Properties account;

   e.   $500.00 on September 9, 2020 – withdrawal;

   f.   $500.00 on September 9, 20020 – withdrawal;

   g.   $500.00 on September 11, 2020 – withdrawal;

   h.   $5,000.00 on September 14, 2020 – transaction;

   i.   $5,000.00 on September 21, 2020 – transaction;

   j.   $4,000.00 on September 28, 2020 – transaction;

   k.   $4,248.50 on September 24, 2020 – DDA Debit Transaction;

   l.   $3,799.86 on September 24, 2020 – DDA Debit Transaction;

m. $4,855.01 on September 24, 2020 – DDA Debit Transaction;

n. $5,000.00 on October 05, 2020 – withdrawal; and

o. $5,000.00 on October 12, 2020 – withdrawal.

55.     Based on my training and experience, none of these expenditures appear to be consistent with payroll or other eligible business expenses.

**N. Lee opened several bank accounts with Fifth Third Bank presumably for the purposes of applying for second draw PPP loans for his businesses; however, the loans were not processed.**

56.     On or about April 2, 2021, Lee opened several accounts at Fifth Third Bank including for OBJ Development Properties (ending 1225), OBJ Properties Inc (ending 9104), and KSL Investment Properties Corporation (ending 0383). Lee attempted to apply for second draw PPP loans for business OBJ Property Services and OBJ Development Properties through Fifth Third Bank; however, because his accounts had been flagged by the bank, the applications were never processed. Based on my training, experience, and the investigation to date including the action by other conspirators, I believe Lee opened these accounts in order to establish himself as a Fifth Third Bank customer in order to fraudulently apply for second draw PPP loans. Based on my training, experience, and the investigation to date, I believe the conspirators hoped to avoid potential scrutiny of their use of first draw PPP proceeds by applying for second draw PPP loans at a different bank.

**O. Discrepancies between Lee's PPP and EIDL applications for OBJ Property Services, LLC are indicative of fraud.**

57.     According to SBA records, on or about July 02, 2020, Lee applied for an EIDL (SBA application number 3308192456) for business OBJ Property Services, LLC, categorized under the "agriculture" industry with a listed address of 108 West Wyoming Avenue, Cincinnati, Ohio 45215. On this application, Lee indicated that he was 100 percent owner of OBJ Property

Services, LLC, Federal TIN 84-2359910, since the business open date of April 06, 2018, and had 10 employees. Lee further indicated that his gross revenues for the 12 months prior to the COVID-19 disaster was $60,000.00. SBA notes indicate that an advance was requested; however, the advance was declined due to an identity verification fail and a bank account verification being unsuccessful.

58.    Comparing this application with the PPP applications, I noticed significant differences, including with Tax ID used and claimed number of employees.   As noted above, based on my training, knowledge, and experience, I know that inconsistencies between loan applications are a common indicator of fraud.

59.    The chart below illustrates the loan applications described above:

| Applicant | Entity | Application Date | Application Number Loan Type | Claimed Date Established/ Date Entity Registered | Tax ID Used | Claimed Monthly/ Employees Claimed | Amount Approved |
|---|---|---|---|---|---|---|---|
| Lee | OBJ Property Services | 7/6/2020 | SYBT PPP 1st Draw 20414935 | N/A 7/11/2019 | 84-2359910 | $42,208.30/month 6 Employees | $105,520.00 Paid to Lentine: $20,000.00 |
| Lee | OBJ Development Properties | 7/23/2020 | SYBT PPP 1st Draw | N/A 5/23/2003 | 80-0074126 | $59,631.25/month 6 Employees | $132,965.00 Paid to Lentine: $20,000.00 |
| Lee | OBJ Property Services | 7/2/2020 | EIDL 3309192456 | 4/6/2018 7/11/2019 | 84-2359910 | N/A 10 Employees | $ - |
| Lee | OBJ Property Services | Unknown | Fifth Third 2nd Draw PPP | N/A 7/11/2019 | 84-2359910 | Unknown | $ - |
| Lee | OBJ Development Properties | Unknown | Fifth Third 2nd Draw PPP | N/A 5/23/2003 | 80-0074126 | Unknown | $ - |

**P. During an interview with FBI Agents, Lee admitted that he did not have any actual employees.**

60.    During a voluntary interview on May 10, 2021 with his attorney present, Lee acknowledged receiving SBA funds and claimed that he depleted all his PPP loan proceeds to pay employees, make utility payments, and pay storage fees. When asked about his employees, Lee claimed to have 12 sub-contractors between both businesses working for him. Lee additionally claimed to FBI agents that all sub-contractors are paid on an as-needed basis (i.e. paid per project). When asked if Lee could provide proof of payment to sub-contractors, Lee claimed that although he would attempt to find proof of payment, he was not organized nor had he filed taxes. To date, he has not provided such records. Notably, PPP borrowers are required to retain documents related to the PPP loan (including documentation of all payroll, interest, rent, and utility payments) for at least six years.

61.    Lee's bank records do not show that he was making payments to sub-contractors. If what Lee told agents was true and that he and his sub-contractors worked throughout the COVID-19 pandemic, based on my training and experience, I would expect to see consistent payment history to such individuals. Moreover, SBA PPP rules and regulations expressly state that independent contractors do not count as employees for purposes of PPP loans because independent contractors may apply for PPP loans of their own. This leads me to believe that Lee deliberately made false statements in an effort to defraud.

**Faith Hill**

**Q. Hill misused PPP loan proceeds received for Events by Faith.**

62.    The investigation additionally revealed that Lentine and Strunk prepared Hill's SBA PPP loan applications and assisted her throughout the application process at SYBT and Fifth Third Bank for business Events by Faith, LLC. Hill successfully received SBA funds for

28

the first and second draw of PPP loan proceeds. Upon Hill successfully receiving her first draw disbursement at SYBT, she paid Lentine $30,000.00 from her PPP loan proceeds. Upon Hill successfully receiving her second draw disbursement at Fifth Third Bank, she paid Lentine $27,600.00 from her PPP loan proceeds. The $30,000.00 and $27,000.00 represented 30 percent of the total amount of her disbursement from each loan. When agents interviewed Lentine on May 14, 2021, he confessed that he charged Hill 30 percent and only kept 20 percent of those proceeds; the remaining 10 percent he gave to Lee as payment for referring Hill to Lentine.

63.     On July 28, 2020, Hill signed an Account Agreement for SYBT "SBA PPP Account" ending in 6327 for Events by Faith, LLC. Upon opening this account, on August 03, 2020, Hill submitted a PPP Borrower Application Form indicating that Events by Faith, LLC, had a business TIN of 81-2890105 and that she was 100 percent owner of the business. Hill claimed an average monthly payroll of $40,370.00 and claimed that the business had nine employees, equaling a loan request of $100,925.00. Hill further claimed that the purpose of the $100,925.00 loan was for payroll and that the address of this business was 7613 Reading Road, Cincinnati, Ohio 45237. Notably, when agents went to this address, there was no signage or storefront, or any evidence that this business ever existed at this location.

64.     On July 31, 2020, SYBT issued loan number 20512635 with a maturity date of July 30, 2025, for Events by Faith, LLC, in the amount of $100,925.00. On August 04, 2020, Hill received a disbursement of $100,925.00 for PPP funds in her account ending in 6327.

65.     A review of Hill's account ending in 6327 immediately upon receiving this disbursement reveals significant indicia of fraud, including: purchases at various restaurants, department and retail stores as well numerous cash withdrawals including as follows:

    a.   $5,000.00 on August 06, 2020 – withdrawal;

b.  $4,000.00 on August 21, 2020 – withdrawal;

c.  $3,500.00 on August 25, 2020 – withdrawal;

d.  $800.00 on August 28, 2020 – ATM withdrawal;

e.  $600.00 on September 08, 2020 – ATM withdrawal;

f.  $500.00 on September 10, 2020 – ATM withdrawal;

g.  $500.00 on September 17, 2020 – ATM withdrawal;

h.  $600.00 on September 18, 2020 – ATM withdrawal;

i.  $600.00 on September 21, 2020 – ATM withdrawal;

j.  $5,000.00 on February 17, 2021 – withdrawal; and

k.  $2,500.00 on March 04, 2021 – withdrawal.

66.     A review of this same business account also revealed that on August 06, 2020, Hill wrote check number 21-56/830 from the Events by Faith, LLC, in the amount of $30,000.00 to "T.S.O." (Tri State Org), reflecting the fee paid to Lentine from SBA PPP loan proceeds. On August 07, 2020, Lentine deposited the $30,000.00 into his account ending in 6114. As explained above, this is a direct misuse of PPP funds. Based on my training, knowledge, and experience, this also suggests a conspiracy to defraud the government.

67.     On or about March 27, 2021, Hill submitted a PPP Second Draw Application and indicated that Events by Faith, LLC, has a business TIN of 81-2890105. Hill claimed an average monthly payroll of $37,036.00 and that the business had nine employees, equaling a loan request of $92,590.00.

68.     On March 31, 2021, Hill received a disbursement of $92,590.00 for PPP loan number 9378478604 in her account ending in 8582. A review of this account immediately upon receiving this disbursement reveals significant indicia of fraud, including purchases at various

department and retail stores including but not limited to Kroger, Target, Sam's Club, Lowe's, Kerry Toyota, Home Depot, Family Dollar, Party City, Uhaul, and a $3,100.00 purchase to Luxe Rentals in Concord, North Carolina, presumed to be for travel, and numerous cash withdrawals and transfers to herself and other individuals, including known conspirators:

    a.  $3,000.00 on April 01, 2021 – check to A.S.;

    b.  $27,600.00 on April 01, 2021 – check to Joseph Lentine;

    c.  $13,000.00 on April 01, 2021 – check to Keith Lee;

    d.  $4,000.00 on April 6, 2021 – check to herself;

    e.  $4,000.00 on April 07, 2021 – check to herself;

    f.  $500.00 on April 08, 2021 – withdrawal;

    g.  $600.00 on April 12, 2021 – withdrawal;

    h.  $4,000.00 on April 13, 2021 – check to herself;

    i.  $500.00 on April 19, 2021 – withdrawal;

    j.  $500.00 on April 22, 2021 – withdrawal;

    k.  $500.00 on April 26, 2021 – withdrawal;

    l.  $500.00 on April 30, 2021 – withdrawal;

    m.  $500.00 on May 03, 2021 – withdrawal;

    n.  $500.00 on May 04, 2021 – withdrawal;

    o.  $1,000.00 on May 06, 2021 – check to J. L.; and

    p.  $3,000.00 on May 09, 2021 – check to herself.

**R. Comparing PPP and EIDL applications for Events by Faith, LLC, there are significant discrepancies indicative of fraud.**

    69.    According to SBA records, on June 24, 2020, Hill applied for an EIDL (SBA application number 3306386080) for business Events by Faith, LLC, categorized under the

31

"agriculture" industry with a listed address of 7613 Reading Road, Suite 4, Cincinnati, Ohio 45237. On this application, Hill indicated that she was 100 percent owner of Events by Faith, LLC, Federal TIN 29-6707592, since the business open date of May 21, 2018, and had 10 employees. Hill further indicated that her gross revenues for the 12 months prior to the COVID-19 disaster was $60,000.00, and that her non-profit/agriculture cost for the 12 months prior to the COVID-19 disaster was $64,000.00. On July 07, 2020, the SBA funded EIDL number 9239518004 in the amount of $20,000.00.

70.    According to the SBA records, on July 02, 2020, Hill applied for another EIDL (SBA application number 3308274802) for business Events by Faith, LLC, categorized under the "agriculture" industry as a sole proprietorship [Note: all other EIDL applications listed this business as an LLC] with a listed address of 7613 Reading Road, Cincinnati, Ohio 45237. On this application, Hill claimed a business open date of April 01, 2016 and further indicated that her gross revenues for the 12 months prior to the COVID-19 disaster was $69,000.00, and her cost of goods sold for the 12 months prior to the COVID-19 disaster was $54,00.00. On July 02, 2020, the SBA flagged this application as a duplicate and noted that Hill's bank account or routing information could not be verified and the bank account provided could not be confirmed to be associated with the business. SBA notes indicate that the loan was denied due to not meeting revenue requirements and the advance was declined due to being a duplicate application.

71.    On or about December 21, 2020, Hill applied for yet another EIDL (SBA application number 3315674167) for business Events by Faith, LLC, this time categorized as an entertainment venue with a listed address of 108 Wyoming Avenue, Cincinnati, Ohio 45215. On this application, Hill indicated that she was 100 percent owner of Events by Faith, LLC, EIN 81-2890105, since the business open date of April 01, 2010. Hill further indicated that her gross

32

revenues for the 12 months prior to the COVID-19 disaster was $120,000.00, and her cost of goods sold for the 12 months prior to the COVID-19 disaster was $82,00.00. On December 21, 2020, the SBA funded an EIDL in the amount of $19,000.00.

72.     Less than a month later, according to SBA records, on or about January 16, 2021, Hill applied for another EIDL (SBA application number 3361494994) for business Events by Faith, LLC, categorized as an event planning business with a listed address of 7613 Reading Road, Second Floor, Cincinnati, Ohio 45237. On this application, Hill listed a business open date of April 10, 2010. Hill further indicated that her gross revenues for the 12 months prior to the COVID-19 disaster was $125,000.00, her cost of goods sold for the 12 months prior to the COVID-19 disaster was $110,00.00, and her compensation received from other sources received as a result of the disaster was $20,000.00. On January 16, 2021, the SBA flagged this application as a duplicate and noted that Hill's bank account or routing information could not be verified, and the bank account provided could not be confirmed to be associated with the business. SBA notes further indicate that the application did not meet SBA revenue requirements.

73.     Comparing all the applications Hill submitted, I noticed significant differences in the claimed date the entity was established, Tax ID used, industry claimed, claimed monthly payroll and number of employees. Based on my training, knowledge, and experience, I know this is a strong indicator of fraud. The chart below illustrates the loans described above:

| Applicant | Entity | Application Date | Application Number Loan Type | Claimed Date Established/ Date Entity Registered | Tax ID Used/ Industry Claimed | Claimed Monthly Payroll/ Employees Claimed | Amount Approved |
|---|---|---|---|---|---|---|---|
| Hill | Events by Faith, LLC | 7/28/20 | SYBT PPP 1st Draw 20512635 | N/A 9/5/2012 | 81-2890105 N/A | $40,370.00/month 9 Employees | $100,925.00 Paid Lentine: $30,000.00 |
| Hill | Events by Faith, LLC | 3/27/2021 | Fifth Third PPP 2nd Draw 9378478604 | N/A 9/5/2012 | 81-2890105 N/A | $37,036.00/month 9 Employees | $92,590.00 Paid Lentine: $27,600.00 |

33

| Hill | Events by Faith, LLC | 6/24/2020 | EIDL 3306386080 | 5/21/2018 9/5/2012 | 29-6707592 Agriculture | N/A 10 Employees | $20,000.00 |
| Hill | Events by Faith, LLC | 7/2/2020 | EIDL 3308274802 | 4/2/2016 9/5/2012 | 29-6707592 Agriculture | N/A 10 Employees | $ -- |
| Hill | Events by Faith, LLC | 12/21/2020 | EIDL 3315674167 | 4/1/2010 9/5/2012 | 81-2890105 Entertainment Venue | N/A 10 Employees | $19,000.00 |
| Hill | Events by Faith, LLC | 1/16/2021 | EIDL 3361494994 | 4/1/2010 9/5/2012 | 81-2890105/ Event Planning | N/A 10 Employees | $ - |

**S.  During an interview with FBI agents, Hill made false statements.**

74.     During a voluntary interview on May 12, 2021, Hill claimed that she used the PPP

loan funds for business expenses including payroll, paying rent at 108 West Wyoming Street,

Cincinnati, Ohio 45215, various other utility bills, and storage/moving expenses. Hill

acknowledged that she paid Lentine a fee of 30 percent for each PPP loan she received. Hill

thought that the fee was expensive; however, because she believed she would be unsuccessful in

obtaining a PPP loan on her own, she agreed to pay Lentine. Hill initially told agents that she had

10 full-time employees prior to the COVID-19 pandemic. However, upon further questioning,

Hill stated that she hires specific vendors for events and pays sub-contractors on an as-needed

basis. She later admitted that she and her daughter J.L. were the only full-time employees of the

business.

75.     Hill claimed that during the COVID-19 pandemic she used approximately 40

percent of the PPP loan proceeds she received to pay herself, her daughter, and sub-contractors

for work. When asked which sub-contractors she paid, Hill told agents that she paid Lee for labor

and construction work, someone she could not recall for administrative work and bookkeeping,

and A.S. for logistics. Hill also claimed that she paid two students that she could not recall the

full names of; however, said this expense was very minimal and only paid them a total of $1,500.00 combined. According to Hill, every person assisting her at events knew they were not guaranteed work and the number of hours they could claim would vary.

76.     On May 14, 2021, agents interviewed A.S. concerning his purported employment with Events by Faith, LLC.  During that interview, A.S. told agents that Hill wrote him a check for $3,000.00 and asked for him to return that money back to her in cash. According to A.S., Hill claimed that she was having an issue with her bank account. A.S. deposited the check for $3,000.00 into his own account and then immediately gave the same amount back to her via CashApp.[7] A.S. acknowledged that he did help Hill on occasion with her events, however, he denied being an employee. A.S. estimated that his assistance with Hill's events could have only been during the duration of December 2019 and March 2020 and disclosed that he did no work for Hill during the COVID-19 pandemic and received no money from her as an employee. Based on my training, knowledge, and experience, each application therefore contained false and fraudulent statements and reflect an intent to defraud.

77.     During the interview with agents, Hill also admitted that she obtained OJDFS-PUA funds. Hill claimed that she only received PUA funds for six to eight weeks for the duration of time between her first and second draw of PPP loans that she received. Records from ODJFS, however, show that she applied for and received PUA from December 19, 2020 to March 27, 2021 (approximately 14 weeks), receiving approximately $6,730.00 in PUA funds. Based on my training, knowledge, and experience, I know it is rare for a business owner that has received funds for businesses large enough to justify SBA PPP loans to simultaneously receive

---

[7] CashApp is a mobile payment service developed by Square, Inc. that allows users to transfer money to one another using a mobile phone application.

35

unemployment credits under the ODJFS-PUA program. Based on my training and experience, I know this to be a strong indicator of fraud.

**Robert Debaun**

### T. Debaun misused PPP loan proceeds received for R&R Custom Finishes.

78.     The investigation further revealed that Lentine and Strunk prepared Debaun's SBA PPP loan applications and assisted him throughout the application process at SYBT for both the first and second draw of PPP loan funds. Debaun successfully received SBA funds for both the first and second draw of PPP loan proceeds. Upon Debaun successfully receiving PPP funds, he paid Lentine approximately 50 percent of the PPP loan proceeds.

79.     Specifically, on July 22, 2020, Debaun signed an Account Agreement for SYBT ending in 6289 for Robert Debaun DBA R&R Custom Finishes. Upon opening this account, on or about July 27, 2020, Debaun submitted a PPP Borrower Application Form for business R&R Custom Finishes, using his social security number as his business TIN, and claimed to be 100 percent owner of the business. Debaun claimed an average monthly payroll of $40,465.00 and claimed that the business had six employees, equaling a loan request of $101,162.00. Debaun further claimed that the purpose of the $101,162.00 loan was for payroll.

80.     On July 24, 2020, SYBT issued loan number 20467135 with a maturity date of July 24, 2025, for Robert Debaun, in the amount of $101,162.00. On July 28, 2020, Debaun received a disbursement of $101,162.00 for PPP funds in his account ending in 6289. A review of Debaun's account ending in 6289 immediately upon receiving this disbursement reveals transfers to Lentine and other accounts:

   a.   $24,000.00 on July 29, 2020  – withdrawal (cash payment to Lentine);

   b.   $33,000.00 on July 30, 2020  – check to Lentine; and

      c.   $15,000.00 on July 30, 2020 – outgoing wire to R&R Custom Finishes.

    81.    On January 11, 2021, Debaun submitted a PPP Second Draw Borrower Application Form and indicated that R&R Custom Finishes, has a business TIN of 22-3928217 [Note: Different TIN than previously used for this business] and that he was 100 percent owner of the business. Debaun claimed an average monthly payroll of $39,433.00, and that the business had had six employees, equaling a loan request of $98,583.00. Debaun further claimed that the purpose of the $98,583.00 loan was for payroll costs, rent/mortgage interest, covered supplier costs, utilities, covered worker production expenditures, and covered operations expenditures. Debaun additionally claimed that gross receipts for R&R Custom Finishes, first quarter totaled $231,959.00, and second quarter totaled $160,051.00.

    82.    On February 09, 2021, Debaun received a disbursement of $98,582.00 for second draw PPP funds in his account ending in 6289. A review of Debaun's account ending in 6289 immediately upon receiving this disbursement reveals withdrawals and transfers as follows:

      d.   $9,000.00 on February 11, 2021 – withdrawal;

      e.   $20,000.00 on February 11, 2021 – check to Lentine;

      f.   $21,000.00 on February 11, 2021 – check to Lentine;

      g.   $500.00 on February 16, 2021 – withdrawal;

      h.   $500.00 on February 17, 2021 – withdrawal; and

      i.   $6,000.00 on February 23, 2021 – withdrawal.

    83.    Debaun also made numerous purchases at various retail stores and restaurants including, but not limited to, Home Depot, Lowes, E&J Trailer, Longhorn, Sam's Club, Meijer, and Recker and Boerger.  Debaun also spent PPP funds to vacation in Florida, California, Texas,

and Tennessee. Bank records show purchases at Airbnb and Vrbo,[8] and various spending in common vacation destinations such as Pigeon Forge, Tennessee.

84.     The chart below illustrates the two loans described above:

| Applicant | Entity | Application Date | Application Number Loan Type | Claimed Date Established/ Date Entity Registered | Tax ID Used | Claimed Monthly Payroll/ Employees Claimed | Amount Approved |
|---|---|---|---|---|---|---|---|
| Debaun | R&R Custom Finishes | 7/27/2020 | SYBT PPP 1st Draw 20467135 | N/A 7/15/2020 | XXX-XX-0928 | $40,465/month 6 Employees | $101,162.00<br><br>Paid Lentine: $57,000.00 |
| Debaun | R&R Custom Finishes | 1/11/2021 | SYBT PPP 2nd Draw | N/A 7/15/2020 | 22-3928217 | $39,433.00/month 6 Employees | $98,583.00<br><br>Paid Lentine: $41,000.00 |

85.     An open record review confirmed that that registration of "Trade Name Registration" for business R&R Custom Finishes, was filed by Debaun to the State of Ohio Secretary of State and effective on July 15, 2020. This is significant because, as noted above, in order to qualify for a PPP loan, small businesses must have been in operation as of February 15, 2020 and a significant source of fraud from SBA loan programs stems from newly-created businesses ineligible to receive such proceeds. Based on the investigation, there are no public records that indicate that R&R Custom Finishes was operating in 2019, let alone that it employed six individuals.

**U. During an interview with agents, Debaun confirmed that he had made false statement in his loan application and misused PPP proceeds.**

86.     On July 09, 2021, Debaun was interviewed at Cincinnati FBI by a FBI Special Agent and a FBI Forensic Accountant in the presence of his attorney.  During the interview, Debaun claimed that R&R Custom Finishes is a construction business that he has operated out of

---

[8] Vrbo is advertised as an American vacation rental online marketplace.

his home garage located in Cincinnati, Ohio. Debaun additionally claimed to use family and friends as sub-contractors for his business and explained that each person that provides services received a 1099 and he does not withhold any taxes. Debaun could not recall the number of sub-contractors he had and estimated it to be three or less, contrary to the information submitted on his PPP loan application.

87.    Debaun disclosed that his sub-contractors had haphazard work schedules and while in the past some worked up to five to six days a week, lately sub-contractors were not working due to lack of work opportunities. Debaun further disclosed that during COVID-19, business was "minimal" and people that were claimed as employees on his PPP loan applications did not in fact work for him during the pandemic.

88.    According to Debaun, Lentine suggested that Debaun apply for the PPP loan. Debaun claimed he provided Lentine with his identifiers and the tax identification number for R&R Custom Finishes and upon Lentine receiving this information, Lentine and his secretary Strunk, prepared PPP loan applications for Debaun including false information. Upon completion of the PPP loan applications, Lentine instructed Debaun to go to SYBT to open business accounts and sign the appropriate paperwork for establishing business accounts and obtaining the PPP loans.

89.    Debaun revealed that of the approximately $200,000.00 he received in PPP funds, Debaun paid Lentine 50 percent of the loan funds to pay the "fees" associated with obtaining the PPP loan. The remaining loan funds were spent on "paying bills, giving money to a few people, spending money on vacation, home stuff, and other personal spending," which he conceded was a misuse of PPP loan fund proceeds. Debaun estimated that he only spent $2,000.00 on actual payroll-related expenses.

### III. CONCLUSION

90.     Based on the foregoing, I request that the Court issue the proposed criminal complaint. There is probable cause to believe that violations of 18 U.S.C. § 371 (Conspiracy to commit offense or to defraud the United States), 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 641 (Conversion of Public Monies), 18 U.S.C. § 1014 (False Statements in Loan and Credit Applications), and 18 U.S.C. § 1040 (Fraud in connection with Major Disaster or Emergency Benefits), among other offenses, have been committed by Joseph Lentine, Charles Murray, Keith Lee, Faith Hill, Robert Debaun, and Angel Strunk. I, therefore, respectfully request that warrants be issued authorizing the arrests of Joseph Lentine, Charles Murray, Keith Lee, Faith Hill, Robert Debaun, and Angel Strunk.

Respectfully submitted,

_____
Ferron M. Yi
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this **31** day of August, 2021.

Karen L. Litkovitz
United States Magistrate Judge

40